IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD SPELLS, JR., Individually and as Administrator of the Estate of Richard Spells, Deceased, )<br><br>Plaintiff, )<br><br>vs. )<br><br>AIR & LIQUID SYSTEMS CORP., a/k/a BUFFALO PUMPS, INC., *et al.*, )<br><br>Defendants. ) | Case No. 3:13-cv-00129-JPG-SCW<br><br>State Court Case No. 12-L-1727 |

## CBS CORPORATION'S NOTICE OF REMOVAL

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**PLEASE TAKE NOTICE** that Defendant CBS Corporation ("Westinghouse")[1] hereby files its Notice of Removal of the above-styled state civil action, removing said matter to this Court pursuant to 28 U.S.C. §§ 1442 and 1446.

## BACKGROUND

1.      Plaintiff's Complaint (Case No. 12-L-1727) was filed in the Circuit Court of Madison County, Illinois on or around October 23, 2012.  Westinghouse was served with said Complaint on January 11, 2013.  (State Court pleadings, including Notice of Service of Process, and Plaintiff's Complaint, attached as "Exhibit A").

2.      Plaintiff has alleged therein that his decedent, Richard Spells ("Mr. Spells"), was injured due, in part, to contact with asbestos-containing equipment while serving as a United States Navy machinist in the engine rooms of several Navy ships

---

[1] CBS Corporation (a Delaware corporation f/k/a Viacom Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).

1

including the *U.S.S. Midway* (CV-41), which was commissioned in 1945 and which was outfitted with asbestos-containing and asbestos-insulated Westinghouse propulsion turbines and other related items of Westinghouse equipment. Plaintiff has asserted claims against Westinghouse under a "design defect" theory of recovery (*i.e.*, that Westinghouse was negligent or otherwise breached a duty of care based on the mere use of asbestos-containing materials in or on its Navy equipment)[2] and under a "failure to warn" theory of recovery (*i.e.*, that Westinghouse was negligent or otherwise breached a duty of care in failing to warn Mr. Spells of asbestos-related hazards).[3] *Compare*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182-83 (7th Cir. 2012).

3. In accordance with 28 U.S.C. §1446(b), this Notice of Removal has been field within thirty days of Westinghouse's first notice of Plaintiff's claim that Mr. Spells was injured due, in part, to contact with asbestos-containing and/or asbestos-insulated Westinghouse Navy equipment.

**FEDERAL OFFICER REMOVAL IS APPROPRIATE UNDER 28 U.S.C. §1442(a)**

4. The basis for this removal is that this action involves a person, *i.e.*, Westinghouse, who – relative to one or more of the claims being stated against it in this case[4] – was acting under the authority, direction, and control of an officer or agency of the United States for purposes of 28 U.S.C. § 1442(a)(1), and who can state at least a colorable federal law-based "government contractor" defense to said claim or claims.

---

[2] *See, e.g.*, Plaintiff's October 23, 2012 "Original Complaint," Count I, ¶ 12(a-c, g) and Count II, ¶ 10(a-c, g).

[3] *See, e.g.*, Plaintiff's October 23, 2012 "Original Complaint," Count I, ¶ 12(d-e) and Count II, ¶ 10(d-e).

[4] "[I]f one claim cognizable under [§ 1442(a)(1)] is present, the entire action is removed, regardless of the relationship between the [§ 1442(a)(1)] claim and the non-removable claims." *National Audubon Soc'y v. Department of Water & Power*, 496 F. Supp. 499, 507 and 509 (E.D. Cal. 1980). *See also*, *Ruppel*, 701 F.3d at 1182.

5. While expressly reserving the right to respond more fully in writing to any motion for remand filed in this case, Westinghouse offers the following statements of fact and citations to authority in satisfaction of its obligation under 28 U.S.C. § 1446 to provide a short and plain statement of the legal and factual basis for its removal.

6. Removal is proper under § 1442(a)(1) whenever it is shown that: 1) the defendant is a "person;" 2) the defendant who was "'acting under' the United States, its agencies, or its officers;" 3) the defendant has been sued "'for or relating to any act under color of such office;" and 4) the defendant can assert at least a colorable federal law-based defense to one or more of the plaintiff's claims. *Ruppel*, 701 F.3d at 1180-81. *See also*, *Mesa v. California*, 489 U.S. 121, 132-34 (1989); 28 U.S.C. § 1442(a)(1)..

7. Westinghouse, a corporation, is a "person" for purposes of § 1442(a)(1). *Ruppel*, 701 F.3d at 1181.

8. Westinghouse's design, manufacture, and supply of Navy equipment (including its Navy turbines installed aboard the *Midway*) – as well as its design, production, and supply of all written materials to be furnished with such equipment – was subject to the detailed and ongoing supervision, direction, and control of one or more federal officers, thereby satisfying the "acting under" requirement of § 1442(a)(1).

9. More specifically, and as detailed throughout the affidavits of Mr. James M. Gate (*Nov. 23, 2010 Affidavit of James M. Gate*, hereinafter "*Gate Aff.*") (attached as "Exhibit B") and retired Navy Rear Admiral Roger B. Horne, Jr. (*Nov. 26, 2010 Affidavit of United States Navy Rear Admiral [Ret.] Roger B. Horne, Jr.*, hereinafter "*Horne Aff.*") (attached as "Exhibit C"), Westinghouse designed, manufactured, and supplied said equipment in accordance with precise, detailed, design specifications (or "MilSpecs")

which were promulgated and/or specifically reviewed and approved by the Navy through one or more of its officers.  Moreover, at all times relevant to this case, one or more Navy officers were resident at Westinghouse's manufacturing facility, personally overseeing the manufacturing process and enforcing Westinghouse's full compliance with the Navy's MilSpecs.  Further, Westinghouse's Navy equipment was subject to various inspections, tests, and trials supervised by the Navy through its officers before it was approved for use on military vessels.

10.   In particular, and as again attested to by both Mr. Gate (*Gate Aff.*, ¶¶ 8 and 11) and Admiral Horne (*Horne Aff.*, ¶ 25), the use of asbestos in and on Westinghouse's Navy equipment was affirmatively required by the Navy's own MilSpecs.  By way of two specific (though non-exhaustive) examples of such MilSpecs, Westinghouse has tendered herewith copies of MilSpec MIL-T-17600C(SHIPS) (Turbine, Steam, Propulsion – Naval Shipboard) (Sept. 21, 1966) (attached as "Exhibit D") and MilSpec MIL-STD-769B(SHIPS) (Thermal Insulation Requirements for Machinery and Piping) (Jan. 3, 1966) (attached as "Exhibit E").

11.   As memorialized in MIL-T-17600C, the Navy required the use of asbestos-containing gaskets in Navy turbines throughout the 1940s, 1950s and 1960s. More specifically, and, again, by way of example only, § 2.1 of that particular MilSpec incorporated, among many other MilSpecs: MIL-G-16983 ("Gaskets, Metallic-Asbestos, Spiral-Wound (Symbol 2410) (for Flange Joints in Piping Systems)") and MIL-A-17472 ("Asbestos Sheet Compressed (Packing Material)").  MIL-T-17600C(SHIPS) § 3.2(m) then mandated the use of these asbestos-containing materials, directing that turbine gaskets associated with saturated steam and pressures less than 300 p.s.i. must comply

4

with MIL-A-17472 while turbine gaskets associated with superheated steam and pressures greater than 300 p.s.i. must comply with MIL-G-16983.

12. As stated by Mr. Gate (*Gate Aff.*, ¶ 8) and Admiral Horne (*Horne Aff.*, ¶ 24), and as reflected at MIL-T-17600C(SHIPS) § 3.6, Westinghouse did not supply or install the thermal insulation used by the Navy with its equipment; rather, such insulation was installed by the Navy or its shipbuilder after the delivery of Westinghouse's equipment. Nonetheless, to the extent Plaintiff's claims against Westinghouse in this case relate in whole or in part to Mr. Spells' purported contact with such insulation, Westinghouse notes that – as exemplified by MIL-STD-769B(SHIPS) – the Navy required the use of asbestos-containing thermal insulation with Navy equipment throughout the 1940s, 1950s, and 1960s. More specifically, and again by way of example only, § 5.3 of that particular MilSpec required the use of asbestos cloth, asbestos yarn/thread, and asbestos millboard as components of all removable insulation pads/blankets used on Navy turbines, while § 5.4.3 required the use of asbestos cloth in making "semi-removable turbine casing flange covers."

13. As further described by Mr. Gate (*Gate Aff.*, ¶¶ 30-33) and Admiral Horne (*Horne Aff.*, ¶¶ 29-33), the scope of the Navy's supervision and control extended to the specific issue of the permissible contents of all warnings and/or other verbal or written communications furnished by Westinghouse with its Navy equipment, with the Navy: expressly reserving final authority over the contents of all such communications; promulgating detailed guidelines governing Westinghouse's drafting of any writings to be supplied in or on its equipment; carefully reviewing and approving all such equipment-related writings in outline, draft, and final form; and specifically prohibiting

any unilateral equipment-related communications by Westinghouse absent the Navy's prior express approval.  Again, simply by way of a specific (though non-exhaustive) example of such a MilSpec, Westinghouse has tendered herewith a copy of MilSpec MIL-M-15071E(SHIPS) (Manuals, Equipment and Systems) (attached hereto as "Exhibit F").

14. MIL-M-15071E(SHIPS) exemplifies the key jurisdictional fact attested to by both Mr. Gate and Admiral Horne – *i.e.*, the fact of the Navy's direct, ongoing, participation in developing, reviewing, and approving the contents of all writings supplied with Westinghouse's Navy equipment.  In this regard, MIL-M-15071E(SHIPS) § 3.11.1 required prior Navy approval of all equipment technical manuals and directed that, upon such approval, the manual at issue could not be altered without the Navy's permission.  As further reflected at MIL-M-15071E(SHIPS) §§ 4.2 and 4.3, an essential aspect of this structured review and approval process was an independent assessment by the Navy as to whether the equipment technical manual under consideration "depict[ed] accurately and adequately the equipment and the operating and maintenance procedures required."

15. In sum, and as attested to by both Mr. Gate and Admiral Horne, all relevant aspects of the design, manufacture, and supply of the Westinghouse Navy equipment at issue in this case – including the contents of all warnings or other written or verbal communications to be supplied therewith – were subject to close, detailed, and ongoing supervision and control by the Navy and its officers.  As previously held by the United States Court of Appeals for the Seventh Circuit, Westinghouse was thus "acting under" a federal officer in its design, manufacture, and supply of that equipment and of

any writings furnished therewith. *Compare*, *Ruppel*, 701 F.3d at 1181 (considering the removability of similar asbestos-related claims involving Westinghouse Navy equipment under § 1442(a)(1); noting that Westinghouse "worked hand-in-hand with the government, assisting the federal government in building warships;" and holding that "'[a]cting under covers situations, like this one where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete").[5]

16. Plaintiff's claims against Westinghouse – including his "design defect" claims arising from the mere use of asbestos in or on Westinghouse's Navy equipment and his "failure to warn" claims arising from Westinghouse's purported failure to warn of asbestos-related health hazards – necessarily arise solely and completely within the overall context of Westinghouse's performance of its contractual obligation to the Navy to design, manufacture, and supply the Navy equipment at issue in this case. As such, there is a "causal nexus" between each of those claims and Westinghouse's conduct under color of its federal office as a military equipment designer, manufacturer, and supplier. *Ruppel*, 701 F.3d at 1181 (considering the removability of similar asbestos-related claims involving Westinghouse Navy equipment under § 1442(a)(1) and holding

---

[5] *See also, e.g.*, *Shepherd v. Air & Liquid Sys. Corp.*, 2012 WL 5874781 at *8-9 (D.R.I. [Mag. Div.] Nov. 20, 2012); *Vedros v. Northrop Grumman Shipbuilding*, 2012 WL 3155180 at *6 (E.D. Pa. Aug. 2, 2012); *Najolia v. Northrop Grumman Ship Sys.*, 2012 WL 1886119 at *5-7 (E.D. La. May 23, 2012); *Morgan v. Bill Vann Co.*, 2011 WL 6056083 at *3, n.3 (S.D. Ala. Dec. 6, 2011); *Kite v. Bill Vann Co.*, 2011 WL 4499345 at *4 (S.D. Ala. Sept. 29, 2011); *Dupre v. Todd Shipyards Corp.*, 2011 WL 4551439 at *6 (E.D. La. Sept. 29, 2011); *Ellis v. Pneumo Abex Corp.*, 798 F. Supp. 2d 985, 990 (C.D. Ill. 2011); *Corley v. Long-Lewis, Inc.*, 2010 WL 723628 at *19 (N.D. Ala. Jan. 28, 2010); *Allen v. CBS Corp.*, 2009 WL 4730747 at *2 (D. Conn. Dec. 1, 2009); *Mitchell v. AC&S, Inc.*, 2004 WL 3831228 at *2 (E.D. Va. Dec. 15, 2004); *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695, 700-01 (S.D. Tex. 2002); *Carter v. ACandS, Inc.*, 2002 WL 31682352 at *4-5 (E.D. Tex. 2002); *Crocker v. Borden, Inc.*, 852 F. Supp. 1322, 1326 (E.D. La. 1994); *Pack v. ACandS, Inc.*, 838 F. Supp. 1099, 1103 (D. Md. 1993). *Cf.*, *Nesbiet v. General Elec. Co.*, 399 F. Supp. 2d 205, 212-13 (S.D.N.Y. 2005) (reaching an identical conclusion based on similar evidence of Navy control as to marine turbines designed and manufactured by General Electric Company); *Machnik v. Buffalo Pumps*, 506 F. Supp. 2d 99, 103 (D. Conn. 2007) (same); *Fink v. Todd Shipyards*, 2004 WL 856734 at *3 (E.D. La. April 20, 2004) (same).

that the "causal connection" required by that statute existed as "the gravamen of [the plaintiff's] complaint occurred while [Westinghouse] acted under color of federal authority"). *Compare*, *Willingham v. Morgan*, 395 U.S. 402, 406 (1969). Stated differently, where, as here, a defendant has been sued for asbestos-related injuries in relation to equipment it manufactured and supplied to the Navy under the Navy's direction and control, that defendant's satisfaction of the "causal nexus" jurisdictional requirement of 28 U.S.C. § 1442(a)(1) is "axiomatic." *Madden*, 205 F. Supp. 2d at 701-02. *See also, e.g.*, *Najolia*, 2012 WL 1886119 at *11; *Morgan*, 2011 WL 6056083 at *8.

17. As to the jurisdictional requirement of the existence of a colorable federal law-based defense, Westinghouse hereby gives notice of its assertion of a "government contractor" defense to each of Plaintiff's claims under *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988) in that: 1) it designed, manufactured, and supplied the Navy equipment at issue in this case (and all warnings or other writings furnished therewith) in accordance with "reasonably precise specifications" promulgated, adopted, or expressly approved by the Navy; 2) said equipment (and all warnings or other writings furnished therewith) conformed with those specifications; and 3) at all times relevant to this suit, the Navy was independently aware of health hazards associated with asbestos exposure.

18. The mere fact of the Navy's mandate that asbestos be used in and on Westinghouse's Navy equipment more than suffices to satisfy the "reasonably precise specifications" requirement as to Plaintiff's "design defect" claims. *Ruppel*, 701 F.3d at 1184-85. *Compare*, *Glassco v. Miller Equip. Co.*, 966 F.2d 641, 642-43 (11th Cir. 1992).

19.  Similarly, Westinghouse has made at least a colorable showing as to the "reasonably precise specifications" requirement as to Plaintiff's "failure to warn" claims in light of its evidence that the Navy: carefully reviewed all writings to be furnished with Westinghouse's equipment; approved of those materials despite the lack of any warning addressing known[6] asbestos-related health hazards; and precluded Westinghouse from communicating any equipment-related safety information outside the scope of that Navy review and approval process.  *Ruppel*, 701 F.3d at 1185-86.  *Compare*, *Tate v. Boeing Helicopters*, 140 F.3d 654, 658 (6th Cir. 1998).

20.  As attested to by Samuel A. Forman, M.D. (*Nov. 23, 2010 Affidavit of Samuel A. Forman*, hereinafter "*Forman Aff.*," ¶¶ 20 and 24) (attached hereto as "Exhibit G"), the Navy was independently aware of health hazards associated with asbestos exposure no later than 1922 and, by 1941, had a sufficient enough understanding of those hazards to promulgate a number of internal rules and regulations intended to control such exposures and to prevent asbestos-related illnesses.  Conversely, the Navy was not open to external assistance in monitoring or addressing asbestos-related hazards, rejecting offers of such assistance (including an offer by several of its insulation suppliers to include asbestos warnings with their products as early as the 1940s) based, in part, on a policy determination that drawing attention to such hazards might cause unrest among shipyard workers and, thus, impede ship production.  (*Id.* ¶¶ 25-28 and 33-34).

21.  In short, Dr. Forman's exhaustive review of the Navy's historical documents failed to reveal a single occasion through the 1960s of the Navy requiring, authorizing or even allowing a Navy equipment supplier to furnish an asbestos-related

---

[6] The fact of the Navy's independent knowledge of asbestos-related health hazards at all times relevant to Plaintiff's claims is discussed immediately below.

warning with or on its equipment. (*Id.* ¶ 36). Rather, and consistent with Admiral Horne's personal recollection, Dr. Forman's document review revealed a pattern in "the Navy's handling of . . . workplace safety and hazard communication, as [it] related to asbestos and other issues" that "reflected the Navy's balance of various considerations, including combat readiness, maintenance of the necessary command structure, the needs of discipline and the hierarchy of risks presented by life and work aboard a combat vessel." (*Id.* ¶ 55). As to "long-term workplace health issues" such as those arising from asbestos exposure, the Navy chose to address such hazards through "training for various trades and jobs, rather than using labeling or other written materials to accompany products into the workplace." (*Id.*).

22.  In light of these facts, the United States Court of Appeals for the Seventh Circuit has held that Westinghouse can state a "government contractor" defense to asbestos-related "design defect" and "failure to warn" claims involving its Navy equipment that is, at the very least, sufficient to satisfy the colorability test for jurisdiction under § 1442(a)(1). *Ruppel*, 701 F.3d at 1183-86.[7]

23.  In sum, the removal of this civil action is proper as – consistent with the short and plain statement of the law and facts offered herein – the federal district courts have original jurisdiction over the subject matter of this suit under § 1442(a)(1) given that Westinghouse was acting under an officer or agency of the United States relative to one or more of the claims stated against it and can state at least a colorable federal law-based defense to said claim or claims.

---

[7] *See also, e.g.*, *Najolia*, 2012 WL 1886119 at *9-10; *Morgan*, 2011 WL 6056083 at *6; *Kite*, 2011 WL 4499345 at *4; *Dupre*, 2011 WL 4551439 at *7; *Corley*, 2010 WL 723628 at *18-19; *Allen*, 2009 WL 4730747 at *5; *Mitchell*, 2004 WL 3831228 at *4; *Crocker*, 852 F. Supp. at 1327; *Pack*, 838 F. Supp. at 1103.

24. Westinghouse need not notify, or obtain the consent of, any other defendant to this action in order to remove this entire suit under § 1442 (a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998); *Ely Valley Mines v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981); *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965); *Allman v. Hanley*, 302 F.2d 559, 562 (5th Cir. 1962).

25. In addition to the exhibits described above, Westinghouse has attached those documents required by 28 U.S.C. § 1446(a) and/or the local rules of the Circuit Court of Madison County, Illinois. (See "Exhibit A").

WHEREFORE, PREMISES CONSIDERED, Westinghouse, pursuant to these statutes and in conformance with the requirements set forth in 28 U.S.C. § 1446, removes this action from the Circuit Court of Madison County, Illinois on this 6th day of February, 2013.

**FOLEY & MANSFIELD, P.L.L.P.**

    */s/ Robert S. Sanderson*
Daniel G. Donahue - #6193558
ddonahue@foleymansfield.com
Robert S. Sanderson - #6295482
rsanderson@foleymansfield.com
Attorneys for Defendant, CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation

1001 Highlands Plaza Drive West
Suite 400
St. Louis, MO 63110
Phone: 314-925-5700
Fax: 314-925-5701
Dated: February 7, 2013

cc: Steven Aroesty
    Napoli, Bern, et al. (via U.S. Postal Service)